**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TETRA TECH, INC., | ) | |
| Plaintiff, | ) | No. 26-1053 |
| v. | ) | Filed: July 25, 2026 |
| THE UNITED STATES, | ) | Re-issued: August 14, 2026* |
| Defendant. | ) | |

**OPINION AND ORDER**

Concurrent with its Complaint, Plaintiff Tetra Tech, Inc. ("Tetra Tech") filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") on July 23, 2026, asking the Court to enjoin the U.S. Army Corps of Engineers ("USACE" or "Agency") from proceeding with performance of the awarded contract challenged in the instant bid protest. ECF No. 3 at 1. The Court held an initial status conference the following day and heard argument on Tetra Tech's pending Motion for a Temporary Restraining Order. *See* Min. Entry, July 24, 2026. In its motion, Tetra Tech alleged—and the Government later confirmed—that the awardee, Pond Constructors, Inc. ("Pond"), is scheduled to begin performance of the awarded contract on July 26, 2026, *i.e.*, three days after the filing of Tetra Tech's Complaint and TRO motion. *See* ECF No. 3 at 1. Though Tetra Tech claims that it meets each of the four factors required for injunctive relief, the Court disagrees, and thus **DENIES** Tetra Tech's request for a TRO.

"A temporary restraining order is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Timberline*

* The Court issued this opinion under seal on July 25, 2026, and directed the parties to file any proposed redactions by August 3, 2026. As the parties did not propose any redactions, the Court reissues the opinion publicly in full.

*Helicopters, Inc. v. United States*, 140 Fed. Cl. 117, 120 (2018) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To obtain preliminary relief, the movant bears the burden to demonstrate that: (1) it will suffer irreparable harm if the injunction is not granted; (2) the movant has a reasonable likelihood of success on the merits; (3) the balance of the equities favors the movant; and (4) granting the injunction is in the interest of the public. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Munilla Constr. Mgmt., LLC v. United States*, 130 Fed. Cl. 131, 135 (2016) ("The standards for determining whether to grant a temporary restraining order are the same as those that apply to a motion for a preliminary injunction."). No one factor is dispositive, and the weakness of one factor may be sufficient to justify denial of preliminary relief depending on the weight (or lack thereof) assigned to the remaining factors. *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019) (citing *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990)).

Even assuming that Tetra Tech is able to demonstrate a likelihood of success on the merits, its TRO motion fails because Tetra Tech's alleged irreparable harm is speculative, and, in any event, the balance of the equities and public interest strongly militate against preliminary relief. *See The Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 676 F. App'x 980, 984 (Fed. Cir. 2017) (noting that a movant must demonstrate irreparable harm to be entitled to injunctive relief).

In its TRO motion, Tetra Tech claims that it will suffer irreparable harm because it will lose "the valuable opportunity to obtain past performance and corporate experience" if Pond is allowed to perform while Tetra Tech's protest is pending. ECF No. 3 at 7–8.[1] At the July 24,

[1] Though Tetra Tech alleged in its Complaint that it is the incumbent contractor, Pl.'s Compl. ¶ 6, ECF No. 1, at the July 24, 2026 conference, counsel for Tetra Tech clarified that Tetra Tech is not the incumbent, nor is Pond. Instead, a third contractor is currently performing the services required by USACE.

2026 status conference, Tetra Tech clarified that this irreparable harm will result because, if it succeeds in its protest, any new award under the solicitation would exclude the length of time Pond was permitted to perform under the current awarded contract pending the result of Tetra Tech's PI motion. In other words, assuming the Court takes two weeks to resolve Tetra Tech's request for a preliminary injunction, the three-year contract Tetra Tech originally bid on, *see* Pl.'s Compl. ¶ 16, ECF No. 1, would be reduced to a two-year- and fifty-week-long contract. As argued by Tetra Tech, the loss of these two weeks of performance would cause it irreparable harm, both economically and as a matter of lost past performance and corporate experience.

The problem is that Tetra Tech's argument "is based more on speculation than fact." *Aero Corp., S.A. v. United States*, 38 Fed. Cl. 237, 241 (1997); *see also Safeguard Base Operations, LLC v. United States*, 140 Fed. Cl. 670, 687 (2018) ("The standard of proof required for a temporary restraining order and preliminary injunction is a preponderance of the evidence, or, demonstration of a fact as 'more likely than not.'" (cleaned up) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 329 (2007))). At the status conference held on July 24, 2026, a USACE representative confirmed that the appropriations funding the awarded contract are not limited to one year. As a result, should Tetra Tech succeed on the merits of its protest, and the Agency decide to award the contract to Tetra Tech or resolicit the services under a new procurement, the Agency would have full ability to obtain the three years of contract performance on which Tetra Tech originally bid. Tetra Tech has pointed to nothing that gives the Court reason to doubt the Agency's representation. Because the Court will not issue an injunction "to prevent injuries neither extant nor presently threatened, but only merely 'feared,'" *Aero*, 38 Fed. Cl. at 241 (quoting *Exxon Corp. v. FTC*, 589 F.2d 582, 594 (D.C. Cir. 1978)), Tetra Tech's speculative claims

are insufficient to demonstrate that it will suffer irreparable harm in the absence of a TRO.[2]

Even should the Court generously assume that Tetra Tech demonstrates irreparable harm, neither the balance of the equities, nor the public interest, favor granting its requested TRO. As represented by the Government during the Court's July 24, 2026 status conference, the fuel support services that will be performed under the awarded contract are essential to numerous military functions, including support for ongoing military efforts and emergency response to natural disasters. The Government affirmed during the conference that, should the Court issue the TRO and prevent Pond from proceeding with contract performance on July 26, 2026, there will be a lapse in services. Tetra Tech's loss of two weeks of contract performance pales in comparison to the potential operational, safety, and national security harms caused by a lapse in fuel support services. Though Tetra Tech attempted to argue that the Government could put in place some sort of stop gap measure, the Government stated that its most ambitious timeline would still require two weeks to execute an alternative contract vehicle, as the current bridge contract, which was issued during the pendency of Tetra Tech's Government Accountability Office ("GAO") protest, cannot be extended. Nevertheless, Tetra Tech continued to argue that the Government's timeline could be expedited, even seeming to suggest that the Government could find a way to obtain the services without a contract in place within the roughly one day it has before the incumbent ceases performance. The Government soundly rejected this possibility.

Based on the record before it, the Court finds it clear that a TRO would result in some lapse in the provision of essential services. This alone is sufficient to outweigh Tetra Tech's purported

[2] To the extent Tetra Tech separately argues irreparable harm resulting from the mere fact that its competitor, Pond, will gain two weeks of performance, the Court again rejects the claim as speculative. Indeed, the Court strains to comprehend how two weeks or less of additional contract performance could benefit Pond to the extent that Tetra Tech is harmed irreparably.

harm. For the same reasons, the Court does not find that there is a greater public interest in preserving "the public's confidence in the procurement process," ECF No. 3 at 9, than in ensuring continued, uninterrupted fuel support services and emergency response capabilities while the Court considers Tetra Tech's preliminary injunction request. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (explaining that the balance of harms and public interest factors merge when the Government is the party opposing preliminary relief).

The Court's determination is further supported by Tetra Tech's delay in filing their protest and accompanying TRO motion. "Temporary restraining orders are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Software Testing Sols., Inc. v. United States*, 58 Fed. Cl. 533, 537 (2003). Thus, a plaintiff's delay may counsel against the award of preliminary relief, as it "undercuts the sense of urgency" and "suggests that there is, in fact, no irreparable injury." *Id.* (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2nd Cir. 1985)).

The GAO decision resolving Tetra Tech's protest was issued on June 18, 2026, ECF No. 1 ¶ 57, more than *a month* before Tetra Tech filed its motion asking that the Court enter a TRO within *three days* to ensure the awarded contract would not proceed as scheduled. The Court finds this to be the type of unreasonable delay that indicates a lack of "urgent need . . . to protect the plaintiff's rights." *Software Testing Sols.*, 58 Fed. Cl. at 537. At the July 24, 2026 status conference, Tetra Tech's counsel explained that she was unable to consult with Tetra Tech about potentially filing a protest in this Court until after the public release of the GAO's decision on July 7, 2026. The Court is not sympathetic to this argument, as counsel in bid protest matters are routinely called upon to advise their clients on whether they can and should pursue a protest without the benefit of full information sharing. Regardless, Tetra Tech's delay following the July

7, 2026 publication of the GAO's decision is also significant. Tetra Tech took 10 days to file its pre-filing notice in this Court, doing so on July 17, 2026, before proceeding to file its Complaint after-hours on July 23, 2026, the second-to-last day permitted under that notice. *See* Rules of the United States Court of Federal Claims, App. C ¶ 2. At multiple points over the last month, Tetra Tech could have expedited filing its protest in this Court, thus permitting the Government the opportunity to review alternative options for ensuring continuity in services. Yet Tetra Tech failed to do so, instead filing its protest after-hours on a Thursday, when the bridge contract is set to end on Saturday, and the awarded contract scheduled to begin the day after, on Sunday. Tetra Tech's own actions, therefore, indicate to the Court that its motion lacks merit.

In sum, Tetra Tech's alleged irreparable harm is speculative; outweighed by the serious operational, safety, and national security concerns raised by a lapse in services; and undercut by Tetra Tech's own delay in filing its protest and TRO motion. Thus, for the foregoing reasons, the Court **DENIES** Tetra Tech's request for a TRO in its Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 3). The Court **DEFERS RULING ON** Tetra Tech's request for a preliminary injunction, and the parties shall continue to brief that request consistent with the expedited briefing schedule entered on July 24, 2026.

**SO ORDERED.**

Dated: July 25, 2026

*<u>/s/ Kathryn C. Davis</u>*
KATHRYN C. DAVIS
Judge